UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>ALPHONSO EUGENE FOSTER, et al.,<br><br>        Defendants. | NO. CR 07-01322 SJO<br><br>**ORDER DENYING DEFENDANT'S "MOTION TO DISCLOSE THE IDENTITY OF AND WHEREABOUTS OF, AND INDUCEMENTS TO CONFIDENTIAL INFORMANTS AND FOR PRE-TRIAL ACCESS"**<br>[Docket No. 194] |

This matter is before the Court on Defendant Michael Edward Baker's "Motion to Disclose the Identity of and Whereabouts of, and Inducements to Confidential Informants and for Pre-Trial Access," filed May 26, 2008. Defendants Alphonso Eugene Foster, ML Scott, Darcell Morris, Latera Keysha Lashana Odom, and Johnnie Lee Boyd, Sr. join in Baker's Motion, but did not file briefs for the Court to consider. Plaintiff United States of America (the "Government") filed an Opposition, to which Baker replied. Because Baker's Reply raised issues not presented in his Motion, the Court permitted the Government to file a Sur-Reply. The Court heard oral argument from the parties on July 14, 2008 and took the matter under submission. Because Baker and the joining Defendants do not demonstrate that disclosure of the confidential informant's identity would be relevant and helpful to their defense, Baker's Motion is DENIED.

I.  BACKGROUND

A federal grand jury indicted Baker on four counts related to the possession and distribution of the illegal drug known as PCP. Two of these counts are based on allegations that Baker twice sold PCP to a confidential informant (the "CI") working for the Government. After these sales allegedly took place, but before the Government charged Baker, the CI arranged a third sale with Baker for the Torrance Police Department ("TPD"). Based on this third sale, the TPD arrested Baker, who was later convicted of selling PCP and sentenced to five years in state prison.

Now, Baker seeks to discover information about the CI, including his identity.

II.  DISCUSSION

Baker asks this Court to order the Government to: (1) disclose the identity of the CI; (2) disclose the "whereabouts" of the CI; (3) produce the CI; (4) make the CI available to the defense; and (5) disclose the nature of any and all inducements provided to the CI. (Mot. 1; Reply 3.)[1] Baker makes this request more than six months before trial. The Government has not determined which witnesses it will call to testify, and Baker has not moved under Federal Rule of Criminal Procedure 12(b)(4)(B) for the Government to provide notice of its intent to use evidence. Accordingly, the Court's analysis assumes that the Government will not call the CI as a witness.[2]

   A.  Baker Has Not Demonstrated a Need to Disclose the CI's Identity.

Generally, the Government must turn over material evidence favorable to a defendant. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). However, the Government holds a limited privilege to conceal the identity of confidential informants. *Roviaro v. United States*, 353 U.S. 53, 59 (1957); *id.* ("The [informant's] privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation."); *see also United States v. Hernandez*,

---

[1] Originally, Baker sought information relating to all informants involved in this case. (Mot. 1.) In his Reply, Baker conceded that, at this time, he cannot make the necessary showing for disclosure as to any informants other than the CI. (Reply 3.)

[2] "[F]ederal agents surveilled and monitored the two charged PCP transactions between Baker and [the CI]." (Opp'n 11.) Accordingly, the Government may prove its case without calling the CI as a witness.

608 F.2d 741, 745 (9th Cir. 1979) ("It is no secret that informers whose identities are disclosed prior to trial are often 'among the missing' when the trial date finally arrives.").

To overcome this "informant's privilege" and force the Government to disclose the CI's identity, Baker bears the burden of showing that "the disclosure of an informer's identity . . . is relevant and helpful to [his] defense . . . or is essential to a fair [trial]." *Roviaro*, 353 U.S. at 60-61; *see also United States v. Wong*, 886 F.2d 252, 257 (9th Cir. 1989). In determining whether Baker meets this burden, the Court considers: "(1) the degree of the [CI's] involvement in the criminal activity; (2) the relationship between [Baker's] asserted defense[s] and the likely testimony of the [CI]; and (3) the [G]overnment's interest in non-disclosure." *United States v. Gonzalo-Beltran*, 915 F.2d 487, 488-89 (9th Cir. 1990). If Baker makes a "minimal threshold showing that disclosure would be relevant to one defense," this Court "must hold an in camera hearing" to determine whether the CI's testimony is actually relevant and helpful. *Henderson*, 241 F.3d at 645. Whether Baker makes this minimal threshold showing is a decision committed to this Court's discretion. *Id.* at 646.

Here, the CI's involvement in the alleged criminal activity is relevant to the two charges against Baker based on allegations that Baker sold PCP to the CI. However, the Government's interest in keeping the CI's identity secret is significant. *See Wong*, 886 F.2d at 257 (recognizing the Government's "strong interest in protecting the valuable resources of the informant in drug investigations"); *Hernandez*, 608 F.2d at 745 (recognizing that disclosure of a confidential informant's identity can place that informant in great physical danger).

Where Baker's Motion fails is the second consideration: the relationship between Baker's asserted defense and the likely testimony of the CI. Baker contends that he "is investigating an entrapment [or] outrageous government conduct defense, primarily focusing on the actions" of the CI. (Reply 2.) He believes that disclosure of the CI's identity will be relevant and helpful to these defenses because: (1) two of the charges against Baker are based upon transactions in which Baker sold PCP to the CI; and (2) Baker was arrested by the TPD based upon a third transaction in which Baker attempted to sell PCP to the CI. According to Baker, these facts show that the CI

"was apparently a rogue agent" who "lured Baker to Torrance to be arrested by local police at the same time he was trying to ensnare Baker for the federal authorities." (Reply 2-3.)

To succeed on his outrageous government conduct defense, Baker must show that the Government's conduct was so outrageous that it "shocks the conscience." *See United States v. Bogart*, 783 F.2d 1428, 1438 (9th Cir. 1986). This is an "extremely high standard" requiring complete fabrication or "manufactur[ing]" of the crime or "excessive physical or mental coercion." *United States v. McClelland*, 72 F.3d 717, 721-22 (9th Cir. 1995); *see also Rogers v. Galaza*, 90 F. App'x 206, 207 (9th Cir. 2004) ("[This defense] is often pleaded, but is rarely successful.").

Yet, Baker does not identify the allegedly outrageous conduct or any other facts that could support this defense. Accordingly, Baker's argument that the CI may have information relevant and helpful to this defense is mere speculation.

To succeed on his entrapment defense, Baker must show two elements: "government inducement of the crime and the absence of predisposition on [his] part . . . ." *United States v. McClelland*, 72 F.3d 717, 722 (9th Cir. 1995). Baker contends that the CI may have induced Baker to commit the crime.

However, if the CI induced Baker to commit the crime, Baker would have some knowledge regarding how that inducement occurred and could articulate specific facts in support of his claim. Yet, Baker presents only one fact in support of an entrapment defense: the CI arranged drug transactions with Baker for both the Government and the TPD. Still, the available evidence regarding the CI's arranged sale for the TPD does not show that the CI was a "rogue agent" out to get Baker. The CI did not approach the TPD. Rather, the CI was pulled over by the TPD while driving through Torrance and, "in order to avoid possible arrest," called Baker and arranged a PCP sale "at the direction of the TPD officers." (Opp'n Ex. 1, at 555-56.) Instead of showing that the CI was a rogue agent freelancing for the TPD (Reply 2), this information demonstrates at best that the CI tried to save himself by giving the TPD a bigger catch.

To find that the Government's privilege to keep an informant's identity secret is overcome by a blanket claim of entrapment without a supporting factual basis would open the doors for the very fishing expeditions the Ninth Circuit feared in *Abonce-Barrera*. *See* 257 F.3d 959 at 970.[3]

At oral argument, counsel for Baker and Foster raised an issue not addressed in Baker's briefs: the CI may have information that could undermine the validity of the wiretap applications and search warrants used in the Government's investigation. While the Government relied on information provided by the CI in obtaining the warrants and wiretaps used in this case, neither Baker nor the joining Defendants provide any more than speculation that the CI can provide information that would render these warrants invalid.

Accordingly, Baker and the joining Defendants fail to make the minimum threshold showing required for this Court to conduct an in camera review of the CI's potential testimony.

### B. Baker's Additional Requests Are Moot Without the CI's Identity.

Because Baker has not provided facts sufficient to warrant disclosure of the CI's identity, Baker's requests for the Government to disclose the CI's whereabouts, to produce the CI, and to make the CI available to Baker are moot. Additionally, Baker's request for the Government to disclose all inducements provided to the CI is premature because the Government has not yet decided whether it will call the CI as a witness at trial. The Government notes that once it determines which witnesses it will call at trial, it will provide Baker with all inducements given to those witnesses sufficiently in advance to allow the defense to prepare for trial. (Opp'n 11-12.)

---

[3] Also, evidence that the CI induced Baker to commit the crimes charged is not helpful unless Baker can show an "absence of predisposition" to commit the crimes. The Government contends that it holds tapes of phone calls in which Baker agrees to supply PCP to at least six persons other than the CI on at least 16 different occasions. None of these calls involved the CI. Baker has not challenged this evidence nor addressed the predisposition prong of his potential entrapment defense.

III. <u>RULING</u>

Because Baker does not demonstrate that disclosure of the CI's identity would be helpful to his defense, Baker's Motion is DENIED. Should the Government identify the CI as a witness for trial, Baker may renew his Motion.

IT IS SO ORDERED.

Dated this 21st day of July, 2008.                    /S/ S. James Otero

                                          ───────────────────────────
                                                  S. JAMES OTERO
                                          UNITED STATES DISTRICT JUDGE